**IN THE COURT OF APPEALS OF IOWA**

No. 18-0163
Filed April 4, 2018

**IN THE INTEREST OF J.M., A.M., M.M., and A.M.,**
**Minor Children,**

**D.M., Father,**
      Appellant.
_____


      Appeal from the Iowa District Court for Marion County, Steven W. Guiter,

District Associate Judge.


      Father appeals from an order terminating his parental rights pursuant to

Iowa Code chapter 232 (2017). **AFFIRMED.**


      Blake D. Lubinus of Lubinus Law Firm, PLLC, Des Moines, for appellant

father.

      Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

      William E. Sales III of Sales Law Firm, P.C., Des Moines, guardian ad litem

for minor children.


      Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Derik appeals from an order terminating his parental rights in his four children, J.M. (born 2012), M.M. (born 2014), A.M. (born 2015), and A.M. (born 2016), pursuant to Iowa Code section 232.116(1)(f) and (h) (2017). On appeal, he contends the State failed to prove the statutory grounds authorizing the termination of his parental rights, the district court should have granted him six months' additional time to reunify with the children, and the strength of the parent-child bond warrants preservation of the parent-child relationship.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established and need not be repeated herein. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (setting forth the statutory framework).

We first address the sufficiency of the evidence supporting the statutory grounds authorizing the termination of Derik's parental rights. At issue here is only the fourth element of section 232.116(1)(f) and (h). To authorize the termination of a parent's rights pursuant to these provisions, we have required the State to prove by "clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

On de novo review, we conclude the State proved the children could not be returned to Derik's care at the time of the termination hearing. The family first came to the attention of the Iowa Department of Human Services (IDHS) in 2014

when M.M. was born and tested positive for oxycodone. The family was offered services in response. The family again came to the attention of IDHS when the youngest child was born and the cord blood tested positive for unprescribed oxycodone. The mother admitted to use of unprescribed opioids. She was unsure what controlled substances Derik was abusing, but she knew he had abused Vicodin. Upon inquiry, maternal relatives expressed concerns to IDHS regarding the parents' abuse of controlled substances. After the parents evaded IDHS on multiple occasions and failed to appear for drug tests, IDHS removed the children from the home in October 2016.

At the time of the termination hearing Derik had an outstanding warrant and was to be immediately transported to jail. Derik's status prevented the children from being returned to his care and satisfies Iowa Code section 232.116(1)(f) and (h). *See In re A.P.*, No. 17-1830, 2018 WL 540985, at *3 (Iowa Ct. App. Jan. 24, 2018) (finding incarceration at the time of the termination hearing satisfies the requirements of section 232.116(1)(f) and (h)); *In re D.S.*, No. 16-1149, 2016 WL 5408175, at *1 (Iowa Ct. App. Sept. 28, 2016) (finding sufficient grounds for termination where "The father admitted at the combined permanency review and termination-of-parental-rights hearing that he could not care for his child at that time due to his incarceration").

The State also proved the children would be exposed to an appreciable risk of adjudicatory harm if returned to Derik's care due to Derik's untreated substance-abuse addiction. Derik admitted he was an opioid addict. By his own account, Derik attempted to complete substance-abuse treatment on five separate occasions while this case was pending. On two occasions, he was unsuccessfully

discharged from treatment. On two occasions, IDHS contacted the treatment provider and learned Derik was not enrolled in any treatment program and Derik had misrepresented his treatment status to the department. In July 2017, Derik did actually enroll for substance-abuse treatment, but his counselor reported Derik's attendance was sporadic. Untreated substance abuse can create an appreciable risk of adjudicatory harm to the children where, as here, there is evidence establishing the children have already been exposed to the drug. *See, e.g., In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (noting drug addiction can render a parent unable to care for children); *In re L.S.*, No. 17-1824, 2018 WL 540968, at *1 (Iowa Ct. App. Jan. 24, 2018) (providing untreated substance abuse can create a risk of harm to the children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *3 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of substance abuse).

In addition, the State established Derik would not be able to meet the basic needs of the children if returned to his care. Over his lifetime, Derik has demonstrated an inability to maintain employment and obtain stable housing. At the time of the termination hearing, Derik was living with his mother. The inability to meet the basic needs of the children supports the termination of Derik's parental rights. *See In re E.R.*, No. 14-1816, 2015 WL 162177, at *3 (Iowa Ct. App. Jan. 14, 2015) (discussing mother's financial instability and inability to meet the child's basic needs as one basis for termination); *In re J.A.*, No. 13-0735, 2013 WL 4012434, at *2 (Iowa Ct. App. Aug. 7, 2013) (noting mother's financial instability

as significant factor in termination); *In re K.K.*, No. 02-0350, 2002 WL 987376, at *1 (Iowa Ct. App. May 15, 2002) (same).

Derik's financial insecurity and inability to maintain stable housing is particularly troubling here. Three of the four children have special needs and require extra attention for appropriate development and basic safety. Derik has not demonstrated any interest or ability in meeting the children's special needs. In the six months prior to the termination hearing, Derik did not exercise visitation with the children for the entire month of August, when he left the state without notifying IDHS. When he returned to the state, he missed five additional visitations. At the termination hearing, Derik admitted the children's mother was responsible for the day-to-day caregiving of the children. He testified he did not know the identity of the children's doctor or dentist. He admitted he had little knowledge regarding the special needs of the children. He admitted he was unaware the children were behind on vaccinations. He did not know any of the children's birthdays. The service provider testified Derik had difficulty watching the children during his supervised visitations. Derik's lack of interest and inability to meet the special needs of his children also militates in favor of the termination of his parental rights. *See In re J.E.*, 723 N.W.2d 793, 799 (Iowa 2006) (finding termination was appropriate where mother could not care for the child based on his special needs); *In re K.G.*, 2017 WL 2189768, at *4 (Iowa Ct. App. May 17, 2017) ("Ruby's inability to provide for the basic needs of the children is of particular concern because the children have heightened needs.").

Derik seems to acknowledge there are sufficient grounds supporting the termination of his parental rights and focuses most of his argument on his request

for an additional six months to progress towards reunification with the children. Pursuant to Iowa Code section 232.104(2)(b) the court may enter an order deferring permanency for six months upon a finding the need for the children's removal will no longer exist at the end of the additional six-month period. The court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination" the need for removal will no longer exist at the end of the extension. Iowa Code § 232.104(2)(b). "The court may look at a parent's past performance" in determining if such a deferral is appropriate. *In re T.D.H.*, 344 N.W.2d 268, 269 (Iowa Ct. App. 1983). "The judge considering [deferred permanency] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

In support of his request for additional time, Derik notes he did begin to engage in more services near the end of the case. For example, Derik noted he completed a parenting class and had started attending—although sporadically— substance-abuse treatment. He also noted he had recently obtained regular employment. Derik also testified he would now be more motivated to achieve change because there would be a fixed deadline.

While Derik's recent engagement with services is commendable, it is too little too late to preclude termination of his parental rights. *See In re A.E.*, No. 16-0510, 2016 WL 3271887, at *2 (Iowa Ct. App. June 15, 2016). There has always been a fixed deadline in this case, and Derik was still unmotivated to make changes until the eve of the termination hearing. The record shows Derik had little interest in complying with services or parenting until the time of the termination

hearing. He failed to engage in substance abuse treatment and misrepresented his treatment status throughout the life of the case. He was often silent at family team meetings, missed significant amounts of visitation leading up to the termination hearing, and was unable to recall basic information about his children under oath. The guardian ad litem reported the termination hearing was the first time Derik had shown interest in the children throughout the past year and a half. It is well established that "[a] parent cannot wait until the eve of termination . . . to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). We affirm the district court's decision to decline Derik's request to afford him more time. "Children simply cannot wait for responsible parenting." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

Derik argues this court should exercise its discretion to preserve the parent-child relationship based on the close bond he has with his children. The factors outlined in 232.116(3) are permissive, not mandatory. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). "Once the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination." *Id.* at 476.

Derik failed to meet his burden of establishing an exception. While he did visit with the children, his visitation was sporadic. The children are all very young and have been out of Derik's care for a significant portion of their lives. In particular, the younger children have spent little time with Derik, certainly too little time to form any meaningful bond. The children seem happy and are well-adjusted to their pre-adoptive placement with their maternal aunt and uncle. The aunt and uncle have demonstrated the willingness and ability to tend to the children's special

needs. Any detriment to the children due to the termination of Derik's parental rights pales in comparison to the benefits of being placed in a stable, safe, and permanent home.

We affirm the judgment of the district court.

**AFFIRMED.**